J. O. REYNOLDS v. THE STATE.

*No. 3119.    Decided March 7.*

**Theft.—Evidence** held insufficient to support a conviction for theft of cattle.

APPEAL from the District Court of Brown. Tried below before Hon. J. W. Timmins.

This conviction is for the theft of a steer, alleged to be the property of A. O. Smith. The punishment was assessed at two years confinement in the penitentiary.

A. C. Smith, a witness for the State, testified: I know the steer alleged to have been stolen; have known it since it was a calf; know it from its flesh marks. It was branded ⊟ on the right flank and right shoulder. On May 29, 1890, the steer was in my exclusive care, control, and management. On that day I saw the steer in defendant's possession with other cattle. It was being driven with other cattle by defendant to my store, to be delivered by him to Mr. Cutbirth. I and others assisted defendant in driving the steer and the other cattle to my store, and I there saw the defendant sell and deliver said steer and other cattle to said Cutbirth. After said sale and delivery D. P. Malone, John McBride, D. T. Granad, and myself roped the steer and examined the brand. The brand had been changed and another brand put on over it. The steer was a short two-year-old scrubby, and was the same steer that had run·on the range near Blackston Byrd's, across the bayou from me. The mark of the steer had also been changed on one ear, a part showing to be fresh and a part old.

Cross-examined: The brands on the steer had been changed so as to be thus, ⅄⊟. I did not attempt to take the steer from Cutbirth, but allowed him to drive it off to Callahan County. Charles Byrd, a magistrate, was present. I did not tell him of it nor attempt to procure a warrant for the arrest of the defendant until late that evening. There were as many as twenty or thirty men present when the steer was roped and examined. I do not know whether the defendant was there at that time. About two weeks after defendant sold the steer the defendant asked D. T. Granad and myself to go to Blackston Byrd's pen and look at a steer which he claimed to have penned. We refused to go, because we knew it was not the steer that the defendant was charged with stealing. The steer was taken by defendant in Brown County, Texas, and without my consent. There were other steers on the range branded ⊟.

D. T. Granad, a witness for the State, testified: I knew a two-year-old steer branded ⊟ on the right flank and right shoulder. It ran on the range near Blackston Byrd's and Young Hester's, who lived about one mile from its accustomed range. It belonged to the estate of Jerome Smith, deceased, and was in the exclusive care, control, and management of A. C. Smith. On May 29, 1890, I saw it at D. P. Malone's pen, in the possession of the defendant. It was with other steers, and we drove all the steers to my store that day to be delivered to Cutbirth. There were several other parties there that had steers in the bunch. When we got to King's A. C. Smith and others put more steers in the herd and we all drove them to my store. The defendant was with us. I saw him sell the steer at my store to Cutbirth and receive pay therefor. We roped the steer and examined the brand. The brand showed to be burned on over an old brand. The old brand was crossed with another brand that looked like Y B connected.

Cross-examined: When I saw defendant with the steer I did not claim
Vol. XXIX—24

the steer of him, nor tell Cutbirth that it was not defendant's steer. It was in the daytime, and some twenty or thirty men were present. The magistrate was there. I did not make complaint before him nor swear out a warrant for the defendant. I did swear out a warrant against the defendant that evening. The reason I did not sooner swear out the warrant, I was afraid the defendant would get away. One day after defendant had taken the steer he asked A. C. Smith and myself to go with him to Blackston Byrd's pen and look at a steer he had penned there. We refused to go, because we knew it was not the steer he had stolen. I am not mistaken about the steer. I knew it from a calf; I knew it by its flesh marks. It was a pale red.

D. P. Malone, a witness for the State, testified: I was at my store when the cattle were delivered to Cutbirth. Smith and Granad asked me to look at a brand on a pale red, scrubby two-year-old steer. The brand was comparatively new, about six weeks old, and had the appearance of having been put on over an old brand. I could not say what the old brand had been. I can not make the brand that was on the steer when I examined him.

John McBride, a witness for the State, testified: I examined the steer at the time testified about by witness Malone. I saw what might have been an old brand under a brand that had the appearance of being about six weeks old. It may not have been an old brand; may only have been a scar.

Cross-examined: I have been in the stock business for years, and have had considerable experience with brands. In my opinion the brand that was on the steer when I saw him never could have been changed from ⊟. It was ⅄ on right flank and ⊓ on right shoulder. I think if the brand had ever been ⊟ it would have shown some parts of the old brand so that it could have been seen.

J. B. Cutbirth, a witness for the defendant, testified: I purchased two animals from the defendant on May 29, 1890. One of them was a pale red steer branded ⅄ on right flank and ⊓ on the right shoulder. I drove the animal to my ranch in Callahan County, and it is there now. It is the same steer in controversy in this case. I have examined the brands on the animal carefully. It was branded as I have above stated. I think it is impossible that the brands ever could have been ⊟. When I purchased the steer the brand was comparatively fresh, and there appeared to be a scar or old brand under the new brand. I was paying $6 per head for yearlings. Paid defendant $4.50 for this animal.

Frank Lewis, a witness for the defendant, testified: Mr. Cason, defendant, and myself penned a scrubby, pale red two-year-old steer branded ⊟ in Blackston Byrd's pen about two weeks after defendant had been charged with the theft of Smith's steer. We found the said steer on the range near said Byrd's house. Defendant and myself went to Granad's

house and requested him and A. C. Smith to go and examine said steer, and they refused to go. I went with defendant and Dave Byrd to Callahan County to see the steer defendant sold to Cutbirth. We roped it and examined it, and I copied the brands. They were thus $\underset{\text{ᴡ}}{\text{Y}}$, $\overline{\text{L}}$. I have been engaged in the stock business for ten years, and I am familiar with brands. I think it is impossible that the brands could have been changed from $\overline{\text{J}}$.

Jesse Cason, a witness for the State, testified substantially the same as the witness Frank Lewis.

Young Hester, a witness for the defendant, testified: I live in the neighborhood of Blackston Byrd and A. C. Smith. I am on that cattle range very often. Have charge of about 300 cattle on said range. For a year and a half or two years I have known on that range a pale red, scrubby two-year-old steer branded $\overline{\text{J}}$. It is on that range now. It is the only steer on that range in that brand, and the only one in that brand I have ever seen there. In my opinion that brand could not be changed into the brands found on the animal sold by defendant to Cutbirth so as to prevent the $\overline{\text{J}}$ from being discovered.

Charles Byrd, a witness for the defendant, testified substantially the same as the witness Young Hester.

Dave Byrd, William McCullock, and the defendant each testified that the steer sold by defendant to Cutbirth belonged to the defendant and was raised by him; that they knew the steer well by its flesh marks and brands.

*John E. Bell,* for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—In this case the appellant has been convicted of the theft of one head of neat cattle, the alleged property of one A. C. Smith.

The conviction is decidedly against the great preponderance of the evidence.

Even one of the State's witnesses, John McBride, who was an expert in brands, says he examined the brands upon the animal in question carefully, and he gives it as his opinion that Smith's brand could never have been changed into the brands upon the animal without "leaving some parts of the old brand so it could be seen."

Several witnesses testified for defendant, and their statements agreed with that of the witness McBride. Defendant's witnesses—that is, several of them—testify most positively to facts which go to establish, in our opinion, a case of mistaken identity as to the animal on the part of the prosecuting witnesses. One or more of these witnesses swear most posi-

tively that Smith's supposed stolen animal is still in his accustomed range, and that they have seen him on the range since this prosecution was instituted.    Three of these witnesses and defendant got up and penned this animal, and went and requested the prosecutors to come and see it and satisfy themselves of their mistake, and the prosecutors declined to do this small favor, not to characterize it as a small act of simple duty and justice.

These prosecutors were present, and not only helped the defendant and others to drive the animal to the place where he sold it, but though they say they recognized it from the start, they interposed no objection and made no claim to it until after it was sold and defendant had been paid for it and gone home.

It does look to us, in the light of these facts, that there was, to say the least of it, strong grounds upon which to base a most reasonable doubt of defendant's guilt.

Defendant's counsel, in closing his earnest written argument in this case, says: "Smith's steer is still upon the range.    The steer Reynolds (appellant) sold to Cutbirth is still in Cutbirth's possession, and if this court sends this case back for a new trial I shall have both animals at court, so that witnesses may inspect both and the truth be demonstrated." The statement of facts impresses us with the probability that this can be done.

We are of opinion the court below should have granted a new trial; and because in our opinion the verdict and judgment are against the evidence, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.